# No. 20-55679

IN THE

# United States Court of Appeals
# for the Ninth Circuit

AYA HEALTHCARE SERVICES, INC. and AYA HEALTHCARE, INC.,

*Plaintiffs-Appellants*,

v.

AMN HEALTHCARE, INC. et al.,

*Defendants-Appellees*.

On Appeal from the
United States District Court for the Southern District of California
No. 3:17-cv-205 (Hon. Michael M. Anello)

## BRIEF OF AMICUS UNITED STATES OF AMERICA
## IN SUPPORT OF NEITHER PARTY

MAKAN DELRAHIM
  *Assistant Attorney General*

MICHAEL F. MURRAY
  *Deputy Assistant Attorney General*

ELYSE DORSEY
  *Counsel to the Assistant Attorney General*

DANIEL E. HAAR
MARY HELEN WIMBERLY
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 514-4510
maryhelen.wimberly@usdoj.gov

*Counsel for the United States*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................ii

STATEMENT OF INTEREST ....................................................................... 1

STATEMENT OF THE CASE ....................................................................... 2

    I.   Legal Background ..................................................................... 2

    II.  Factual and Procedural Background ........................................... 5

SUMMARY OF ARGUMENT ................................................................... 11

ARGUMENT .............................................................................................. 13

    I.   The Non-Solicitation Agreement Between Aya And AMN
        Is A Horizontal Restraint ........................................................ 13

    II.  The Per Se Rule Applies To Naked Non-Solicitation
        Agreements Between Labor-Market Competitors ...................... 20

    III. AMN Bears The Burden To Demonstrate That The Non-
        Solicitation Agreement Is Reasonably Necessary To The
        Parties' Legitimate, Procompetitive Collaboration ................... 27

CONCLUSION .......................................................................................... 37

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Arizona v. Maricopa Cnty. Med. Soc'y*,
  457 U.S. 332 (1982) ........................................................................ 26

*ASARCO, LLC v. Union Pac. R.R. Co.*,
  765 F.3d 999 (9th Cir. 2014) .......................................................... 29

*Blackburn v. Sweeney*,
  53 F.3d 825 (7th Cir. 1995) ...................................................... 31, 36

*Broadcast Music, Inc. v. Columbia Broadcasting Sys.*,
  441 U.S. 1 (1979) ............................................................................ 26

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
  485 U.S. 717 (1988) .......................................................................... 3

*California ex rel. Harris v. Safeway, Inc.*,
  651 F.3d 1118 (9th Cir. 2011) (en banc) ........................................ 33

*Catalano, Inc. v. Target Sales, Inc.*,
  446 U.S. 643 (1980) .......................................................................... 4

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
  433 U.S. 36 (1977) .................................................................... 15, 19

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) .......................................................................... 3

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2003) .................................................. 28, 29

*Hammes v. AAMCO Transmissions, Inc.*,
  33 F.3d 774 (7th Cir. 1994) ............................................................ 22

*In re High-Tech Emp. Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) .................................... 23, 24

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ............................................................ 29

ii

## TABLE OF AUTHORITIES—Continued

Page(s)

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
   726 F.2d 1381 (9th Cir. 1984) ............................................. 28, 29, 30

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ......................................................... 3, 4, 21, 26

*Lektro-Vend Corp. v. Vendo Co.*,
   660 F.2d 255 (7th Cir. 1981) ..................................................... 29, 30

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ............................................................. 32

*Mandeville Island Farms v. Am. Crystal Sugar Co.*,
   334 U.S. 219 (1948) ........................................................................ 27

*Metro Indus., Inc., v. Sammi Corp.*,
   82 F.3d 839 (9th Cir. 1996) ............................................................... 3

*Nat'l Football League v. N. Am. Soccer League*,
   459 U.S. 1074 (1982) ................................................................. 29, 30

*NCAA v. Bd. of Regents*,
   468 U.S. 85 (1984) ............................................................................ 2

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018) ....................................... 3, 4, 13, 14, 15, 16

*Palmer v. BRG of Ga., Inc.*,
   498 U.S. 46 (1990) ........................................................ 4, 15-16, 19

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
   792 F.2d 210 (D.C. Cir. 1986) ........................ 2, 5, 14, 28, 31, 32, 35

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997) .............................................................................. 4

*Texaco Inc. v. Dagher*,
   547 U.S. 1 (2006) ........................................................................ 5, 28

## TABLE OF AUTHORITIES—Continued

Page(s)

*United States v. Addyston Pipe & Steel Co.*,
85 F. 271 (6th Cir. 1898) ........................................................ 5, 28, 30

*United States v. Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015)............................................................ 16

*United States v. Brown*,
936 F.2d 1042 (9th Cir. 1991) ................................................... 21, 27

*United States v. Coop. Theatres of Ohio, Inc.*,
845 F.2d 1367 (6th Cir. 1988) ......................................................... 21

*United States v. eBay, Inc.*,
968 F. Supp. 2d 1030 (N.D. Cal. 2013) .................................... 23, 24

*United States v. Gen. Motors Corp.*,
384 U.S. 127 (1966) ........................................................................ 16

*United States v. Joyce*,
895 F.3d 673 (9th Cir. 2018) .............................................. 2, 3, 4, 27

*United States v. Socony-Vacuum Oil Co.*,
310 U.S. 150 (1940) ........................................................................ 36

*United States v. Topco Assocs.*,
405 U.S. 596 (1972) ........................................................................ 21

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
549 U.S. 312 (2007) ........................................................................ 27

**STATUTES:**

15 U.S.C. § 1.................................................................................... 1, 2

15 U.S.C. § 2....................................................................................... 2

**RULES:**

Fed. R. App. P. 29(a)(2)........................................................................ 1

Fed. R. Civ. P. 12(b)(6)....................................................................... 29

# TABLE OF AUTHORITIES—Continued

Page(s)

OTHER AUTHORITIES:

Phillip E. Areeda (late) & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (Wolters Kluwer Cheetah) .............................. 14, 17, 22

U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidance for Human Resource Professionals* (Oct. 2016), https://www.justice.gov/atr/file/903511/download ......................... 25

Gregory J. Werden, *The Ancillary Restraints Doctrine After Dagher*, 8 Sedona Conf. J. 17 (2007) .............................................. 29

## STATEMENT OF INTEREST

The United States enforces the federal antitrust laws and has a strong interest in their correct application.  In particular, the United States enforces Sherman Act Section 1, 15 U.S.C. § 1, against agreements to allocate labor markets among employers, including agreements not to solicit, hire, or otherwise compete for each other's employees—often referred to generically as "no-poach" agreements—and it has filed multiple statements of interest on this type of agreement, *e.g.*, *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, No. 2:18-mc-798 (W.D. Pa. Feb. 8, 2019) (Doc. 158); *Stigar v. Dough Dough, Inc.*, No. 2:18-cv-244 (E.D. Wash. Mar. 8, 2019) (Doc. 34).  The district court, in fact, cited to one of the United States' filings in this area.  *See* ER19 (May 20, 2020 Order 26).  The United States offers this brief, pursuant to Federal Rule of Appellate Procedure 29(a)(2), to explain its views on the law applicable to non-solicitation agreements between competing employers.  The United States takes no position on any other issues or the disposition of this appeal.

1

## STATEMENT OF THE CASE

Aya Healthcare Services, Inc. and its affiliated company (Aya) brought claims under Sherman Act Sections 1 and 2, 15 U.S.C. §§ 1, 2, and California law against AMN Healthcare, Inc. and its affiliated companies (AMN). The district court granted summary judgment in favor of AMN. Aya appeals.

## I. Legal Background

Sherman Act Section 1 bars "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Courts have interpreted this text to "prohibit[] only agreements that unreasonably restrain trade." *United States v. Joyce*, 895 F.3d 673, 676 (9th Cir. 2018).

Restraints subject to this prohibition are generally categorized as "horizontal" or "vertical." Horizontal restraints are imposed by agreements between actual or potential "competitors on the way in which they will compete with one another." *NCAA v. Bd. of Regents*, 468 U.S. 85, 99 (1984); *accord Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) (Bork, J.). Vertical

restraints are "imposed by agreement between firms at different levels of distribution" on matters over which they do not compete. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (quoting *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988)).

Courts employ two different rules to determine whether a particular restraint violates Section 1. *See Am. Express*, 138 S. Ct. at 2283. Under the first, "the determination of whether a particular agreement in restraint of trade is unreasonable involves a factual inquiry commonly known as the 'rule of reason.'" *Joyce*, 895 F.3d at 676 (quoting *Metro Indus., Inc., v. Sammi Corp.*, 82 F.3d 839, 843 (9th Cir. 1996)). Courts "conduct a fact-specific assessment . . . to assess the restraint's actual effect on competition." *Am. Express*, 138 S. Ct. at 2284 (alterations and quotation marks omitted; quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984)). This assessment seeks to "distinguish[] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). "[N]early

every . . . vertical restraint . . . should be assessed under the rule of reason." *Am. Express*, 138 S. Ct. at 2284.

The second rule is the "per se rule," which recognizes that some types of restraints have "such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful per se." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Under this rule, a court need not evaluate the actual competitive effect of the particular restraint at issue because such "categories of restraints" are "necessarily illegal," *Leegin*, 551 U.S. at 886, and "any business justification for the defendant's conduct is neither relevant nor admissible," *Joyce*, 895 F.3d at 677. "Typically only 'horizontal' restraints . . . qualify as unreasonable per se." *Am. Express*, 138 S. Ct. at 2283-84.

Examples of per se illegal restraints include "naked" agreements among actual or potential competitors to fix prices, *e.g.*, *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980), rig bids, *e.g.*, *Joyce*, 895 F.3d at 677, or divide or allocate markets, *e.g.*, *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990). Such restraints are referred to as "naked" restraints when they are not reasonably necessary to legitimate

collaborations and thus "can have no purpose other than restricting output and raising prices." *Rothery Storage*, 792 F.2d at 229.

On the other hand, under the "ancillary restraints doctrine," a horizontal agreement ordinarily condemned as per se unlawful is "exempt from the per se rule," and subject to analysis under the rule of reason, if it meets two requirements. *Rothery Storage*, 792 F.2d at 224. The restraint must be (i) "subordinate and collateral," *id.*, to a "legitimate business collaboration, such as a business association or joint venture," *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006), and (ii) "reasonably necessary" to achieving that collaboration's procompetitive purpose, *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 281 (6th Cir. 1898) (Taft, J.), *aff'd as modified in other part*, 175 U.S. 211 (1899).

## II.  Factual and Procedural Background

Aya and AMN both operate staffing agencies of temporary healthcare employees, such as travel nurses, who take on assignments at hospitals during times of high demand. ER20-21 (May 20, 2020 Order 2-3). AMN also operates as a managed-service provider, undertaking the overall management responsibilities for temporary

5

staffing on behalf of its customer hospitals. ER21 (*Id.* at 3). In this capacity, whenever AMN was unable to fulfill its customers' demand with its own travel nurses, AMN subcontracted "spillover assignments" to associated vendors, such as Aya, who would provide their travel nurses to the hospitals through AMN. ER22 (*Id.* at 4). To receive such spillover assignments, Aya and the other associated vendors each entered contracts with AMN that included a provision prohibiting them from soliciting AMN's employees. *Ibid.* In this way, Aya claimed, AMN ensured that it alone would "keep control of the only 'pool' of travelers that is sufficiently large and varied to meet the requirements of many or most hospital networks and large hospitals." ER1890 (Third Am. Compl. ¶ 4).

AMN's non-solicitation provision is under seal. *See* ER25 (May 20, 2020 Order 7) (language redacted). Aya has described the provision as "forbid[ding] the rival providers in perpetuity to initiate job offers or otherwise solicit any of AMN's designated 'employees,' no matter how or where employed, and even when not currently on assignment for AMN." ER1917 (Third Am. Compl. ¶ 123) (emphasis removed); *but see* ER1981 (Answer ¶ 123) (denying allegation).

6

Aya alleged that, "[o]ut of commercial necessity, [Aya] yielded to Defendants' restraints from 2010 to 2015, suffering great harm in consequence" in the form of "exclusionary damages." ER1892 (Third Am. Compl. ¶ 10). According to Aya, "[d]uring this period, these restraints appreciably compromised and hindered Aya's efforts to form a large, varied pool of travelers that could compete for large contracts and compete generally in the medical-traveler markets." ER1949 (*Id.* ¶ 263).

Eventually, Aya began operating as a managed-service provider also. ER22 (May 20, 2020 Order 4). In mid-2015, Aya alleged, "it decided no longer to honor" AMN's non-solicitation provision, ER1919 (Third Am. Compl. ¶ 129), and "began to compete openly" with AMN "to develop the best possible pool of travelers," ER1892 (*Id.* ¶ 10).

"In response," Aya claimed, "Defendants subjected [Aya] to a series of reprisals that were intended to make an example of [Aya] and thereby deter other rivals from doing the same thing." ER1892 (Third Am. Compl. ¶ 10). Aya allegedly suffered "retaliatory damages" in the form of "disruption of its operations," "the ongoing reluctance of AMN recruiters to work for Aya," and "tortious interference." ER1953 (*Id.*

7

¶¶ 283-84). Aya and AMN terminated their contractual relationship by the end of 2015. ER24 (May 20, 2020 Order 5).

In 2017, Aya sued AMN for, among other things, violation of Section 1 of the Sherman Act under the per se rule or, alternatively, the rule of reason. ER1955-59 (Third Am. Compl. ¶¶ 294-328). The district court declined to dismiss Aya's Second Amended Complaint, concluding that it adequately stated a claim under Sherman Act Section 1. ER1850-68 (June 19, 2018 Order 14-32). The court rejected AMN's characterization of the parties' non-solicitation provision as purely vertical, finding instead that Aya had "sufficiently alleged that the agreements in question can plausibly be characterized as joint ventures," ER1855 (*Id.* at 19), which it viewed as a "third category" of restraints, ER1854 (*Id.* at 18) . The court further determined that Aya plausibly alleged that "Defendants' no-poaching restraints result in an agreement among rivals about how they will compete for employees," and thus Aya's sufficiently pleaded "that the restraints are of a type that are subject to per se treatment." ER1858 (*Id.* at 22). The court declined to resolve the disputed factual question of "whether the

8

restraints are ancillary to procompetitive business purposes." ER1863 (*Id.* at 27).

In May 2020, the district court granted AMN's motion for summary judgment on Aya's claims for "retaliatory damages." ER19-55 (May 20, 2020 Order). The court held that Aya could not recover such damages under Section 1 because there was no evidence that "there even is a cartel that retaliated against Aya." ER41 (*Id.* at 23). The court explained that "[t]he key feature of a cartel is the concerted action between competitors toward a per se illegal goal," ER42 (*Id.* at 24), and that key feature was missing because, among other reasons, "[t]hose non-solicitation provisions are not 'naked' horizontal agreements . . . , but rather they are admittedly part of a collaboration agreement to fulfill the demand of hospitals for travel nurses," ER43 (*Id.* at 25).

In reaching this determination, the district court noted the absence of binding precedent holding that no-poach agreements are per se illegal and concluded that, regardless, "this case involves no such thing." ER44 (May 20, 2020 Order 26). The court quoted one of the United States' filings in a different case, which described the particular agreements at issue in that case, when it stated: "A no-poaching

agreement refers to an agreement between competing employers 'not to solicit, recruit, hire without prior approval, or otherwise compete for employees.'" *Ibid.* (quoting Competitive Impact Statement 1, *United States v. Knorr-Bremse AG*, No. 1:18-cv-747 (D.D.C. April 3, 2018) (Doc. 3)). The court continued: "In contrast, a non-solicitation agreement generally refers to an agreement between two parties not to solicit each other's employees or customers." *Ibid.* (citation omitted).

Lastly, although the district court rejected AMN's antitrust-injury arguments concerning Aya's claims for "exclusionary damages," ER36-41 (May 20, 2020 Order 18-23), the court ordered the parties to submit supplemental briefing on those claims, ER54-55 (*Id.* at 36-37). The court explained that its reasons for rejecting Aya's retaliatory-damages claims—deficiencies in the antitrust theory underlying those claims— would "similarly appear fatal to Aya's claim for exclusionary damages, which the Court understands is redress that Aya seeks for both its Sherman Act Sections 1 and 2 claims." *Ibid.*

Following the parties' supplemental briefing, the district court granted summary judgment to AMN on Aya's remaining federal antitrust claims. ER2-18 (June 22, 2020 Order). Noting that Aya's

supplemental briefing defended only its Section 1 claim, ER6 (*Id.* at 5), the court concluded that Aya had not presented evidence of any anticompetitive harm.  ER8-18 (*Id.* at 7-17).

The clerk entered a final judgment on June 22, 2020.  ER1.  Aya appeals.

## SUMMARY OF ARGUMENT

1.  The undisputed characteristics of the parties' non-solicitation agreement demonstrate that it constitutes horizontal labor-market allocation, even though Aya and AMN are in a subcontractor-subcontractee relationship.  The non-solicitation provision restricts AMN's actual or potential employer-rival, Aya, from competing with AMN for its employees by soliciting them to work for Aya.  An agreement of this type is distinguishable from purely vertical restraints that typically exist, for example, in the manufacturer-distributor context because it restricts Aya's ability to recruit labor-market rival AMN's employees, including for work outside of their subcontractor-subcontractee relationship.  It is thus a horizontal restraint.

2.  Naked non-solicitation agreements between competitors in a labor market are per se illegal.  The district court was wrong in so far as

it appeared to question whether bilateral no-poach agreements ever could be per se illegal. It is well-settled that naked agreements among competitors to divide markets are per se unlawful and that labor markets should be treated no differently than product markets. The court also was wrong when it distinguished a non-solicitation agreement from a no-poach agreement by relying on language in one of the United States' filings in its own enforcement action. In that filing, the United States described the characteristics of the particular no-poach agreement at issue and did not draw such a distinction. Contrary to the court's interpretation, a naked agreement among competing employers that includes any or all of the commitments not to solicit, hire, or otherwise compete for employees is per se illegal.

3. An otherwise per se illegal non-solicitation agreement among competitors nonetheless may be subject to the rule of reason if it qualifies as an ancillary restraint. Under the ancillary-restraints doctrine, once a plaintiff has demonstrated the existence of a horizontal non-solicitation agreement, the defendant claiming ancillarity bears the burden of showing that the agreement is reasonably necessary to a separate, legitimate collaboration. The district court did not apply the

12

correct ancillary-restraints-doctrine analysis when ruling on summary judgment. It erroneously failed to evaluate whether the restraint was reasonably necessary to the collaboration between Aya and AMN—an evaluation that would have included asking whether there were less restrictive alternatives to the parties' non-solicitation agreement.

## ARGUMENT

## I. The Non-Solicitation Agreement Between Aya And AMN Is A Horizontal Restraint.

Although the language of the parties' non-solicitation provision is under seal, certain features of the provision appear undisputed. The provision reflects an agreement between Aya and AMN—two competitors for temporary healthcare workers—that prohibits Aya from soliciting AMN's employees. An agreement of this nature is a horizontal restraint.

**1.** When a plaintiff seeks to enforce Sherman Act Section 1, the orientation of the challenged restraint (horizontal or vertical) often determines whether the per se rule or the rule of reason applies. *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018). Because certain horizontal restraints are illegal as a matter of law, the existence of a horizontal restraint may render unnecessary the fact-intensive

13

analysis required under the rule of reason. *See ibid.* To determine whether a challenged agreement is a horizontal restraint, a court should evaluate whether the agreement (1) is among participants who are "either actual or potential rivals at the time the agreement is made," and (2) "eliminates some avenue of rivalry among them." Phillip E. Areeda (late) & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1901b[1]; *accord, e.g.*, *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) ("All horizontal restraints . . . eliminate some degree of rivalry between persons or firms who are actual or potential competitors."). "Horizontal agreements . . . as a class provoke harder looks than any other arrangement" because "they pose the most significant dangers of competitive harm." *Antitrust Law* ¶ 1902a.

Purely vertical agreements, by contrast, "are a customary and even indispensable part of the market system." *Antitrust Law* ¶ 1902d. For example, territorial allocation agreements are common in manufacturer-distributor and analogous relationships. They serve to

---

[1] This treatise is cited as *Antitrust Law* [paragraph number]. All citations are to the version in Wolters Kluwer's Cheetah online library.

limit geographically "the number of sellers of a particular product competing for the business of a given group of buyers." *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54 (1977). A restriction of this type is said to restrain "intrabrand" competition because it limits "competition between the distributors . . . of the product of a particular manufacturer." *Id.* at 51 n.19. It often does so, however, to the benefit of interbrand competition "by allowing the manufacturer to achieve certain efficiencies in the distribution of his products" and, in "a number of ways," "to compete more effectively against other manufacturers." *Id.* at 54, 55. This potential procompetitive benefit is a significant one—interbrand competition "is the primary concern of antitrust law." *Id.* at 51 n.19; *accord Am. Express*, 138 S. Ct. at 2290. Accordingly, because vertical territorial-allocation agreements may have both procompetitive and anticompetitive effects, courts evaluate their legality using the rule of reason's balancing approach. *GTE Sylvania*, 433 U.S. at 59.

In some circumstances, an agreement will include both horizontal and vertical elements. When the vertical elements further the objectives of an otherwise horizontal agreement, a court should evaluate the agreement as a horizontal restraint. *See, e.g.*, *Palmer v. BRG of*

*Georgia, Inc.*, 498 U.S. 46, 47, 49-50 (1990) (treating as horizontal an agreement between two competitors to divide the market, even though one party also became the licensee of the other); *United States v. Gen. Motors Corp.*, 384 U.S. 127, 132-38, 140-41, 144-46 (1966) (using vertical restrictions, manufacturer enforced horizontal restraint agreed upon by distributors); *United States v. Apple, Inc.*, 791 F.3d 290, 325 (2d Cir. 2015) ("where the vertical organizer has not only committed to vertical agreements, but has also agreed to participate in the horizontal conspiracy . . . , the court need not consider whether the vertical agreements restrained trade because all participants agreed to the horizontal restraint").

**2.** Aya argues that the non-solicitation provision in its contract with AMN is a horizontal restraint, and AMN argues that it is vertical. When denying AMN's second motion to dismiss, the district court concluded that Aya's "allegations concerning the no-poaching restraints are sufficient to allege that the restraints are of a type that are subject to per se treatment," ER1858 (June 19, 2018 Order 22), thereby implicitly determining that the alleged restraint is horizontal, *see generally Am. Express*, 138 S. Ct. at 2283-84 ("Typically only 'horizontal'

16

restraints . . . qualify as unreasonable *per se*.").  This determination was correct.

Aya and AMN are related to each other in at least two ways. First, they are in a subcontractor-subcontractee relationship, pursuant to which Aya supplies temporary nurses through AMN's managed-service contract with a hospital.  *See, e.g.*, ER22 (May 20, 2020 Order 4); Redacted Decl. of Alan Braynin ¶¶ 19-26 (D. Ct. Dkt. 206-1).  Second, Aya and AMN are competitors, both as employers of temporary healthcare workers and as providers of staffing and other services to hospitals.  *See, e.g.*, AMN Redacted Mem. in Supp. of Mot. For Summ. J. 5-7 (D. Ct. Dkt. 151) (describing how Aya is "a fierce and powerful competitor"); Aya Redacted Mem. in Opp'n to Mot. For Summ. J. 7 (D. Ct. Dkt. 206) (describing how "Aya and AMN compete against one another").  Accordingly, because Aya and AMN were and are "actual or potential rivals," the orientation of the challenged non-solicitation provision depends on whether it "eliminates some avenue of rivalry among them."  *See Antitrust Law* ¶ 1901b.

Although the parties' non-solicitation provision is under seal, two key facts appear to be undisputed in the publicly available record that

17

demonstrate that the provision is a horizontal restraint. First, the provision prohibited Aya from soliciting employees of AMN for employment. *See* ER22 (May 20, 2020 Order 4) (Aya's contracts with AMN "include[d] certain non-solicitation provisions"); ER16 (June 22, 2020 Order 15) ("these provisions limit the ability of AMN's rivals and former employees to actively solicit AMN's employees"). Second, the prohibition appears not to be purely intrabrand (if it were, this characteristic would potentially, although not conclusively, suggest a vertical restraint). Neither the district court nor the parties have described it as limited to solicitations within the parties' subcontractual relationship; rather, the provision apparently would also preclude Aya from soliciting AMN's employees to develop its own, competing brand. Thus, the non-solicitation provision eliminated one avenue of rivalry—solicitation of AMN's employees—between Aya and AMN as distinct brands. Accordingly, the provision is a horizontal restraint.

In this way, AMN's non-solicitation provision is akin to the interbrand market-allocation agreement that the Supreme Court treated as a horizontal restraint in *Palmer*, and unlike the purely intrabrand market-allocation agreement that the Court evaluated as a

18

vertical restraint in *GTE Sylvania*. Aya agreed not to compete for AMN's employees by soliciting them to work for Aya. *See* ER22 (May 20, 2020 Order 4). In *Palmer*, two bar-review providers—HBJ and BRG—"[e]ach agreed not to compete in the other's territories": "BRG received [the Georgia] market, while HBJ received the remainder of the United States." 498 U.S. at 49. In both cases, the parties were also in what could be characterized as a vertical relationship: AMN subcontracted certain travel-nurse-staffing responsibilities to Aya, ER22 (May 20, 2020 Order 4), and in *Palmer*, HBJ "gave BRG an exclusive license to market HBJ's material in Georgia and to use its trade name," 498 U.S. at 47. Nevertheless, in both cases, the challenged provision limited the participating parties' ability to act as competitors—the definition of a horizontal restraint. *See id.* at 49-50.

Such circumstances are distinguishable from the vertical market-allocation agreement at issue in *GTE Sylvania*, where a manufacturer limited the locations from which its franchisees were authorized to sell its products. *See* 433 U.S. at 38-39. An analogous intrabrand restraint in the present case would be one that precluded Aya from soliciting AMN employees only to fulfill its subcontracted assignments from

19

AMN.  The non-solicitation provision in dispute appears not to be so limited, however, and instead to cover even those instances when Aya would be soliciting AMN's employees to build its own, competing brand. As such, and unlike the purely vertical restraint in *GTE Sylvania*, the parties' non-solicitation provision is an interbrand restriction between actual or potential competitors eliminating an avenue of rivalry between them—that is, a horizontal restraint.

## II. The Per Se Rule Applies To Naked Non-Solicitation Agreements Between Labor-Market Competitors.

After accepting that a no-poach agreement could be per se illegal in its order denying AMN's second motion to dismiss, ER1858 (June 19, 2018 Order 22), on summary judgment, the district court signaled skepticism of this principle, observing that "neither the Supreme Court nor the Ninth Circuit has held so-called 'no-poaching' agreements to be per se illegal under the antitrust laws," ER44 (May 20, 2020 Order 26). Moreover, the court reasoned, this case did not involve a no-poach agreement, but instead involved a non-solicitation agreement, which it appeared to view as meaningfully different for purposes of determining whether the per se rule could apply.  *See ibid.* (quoting Competitive Impact Statement 1, *United States v. Knorr-Bremse AG*, No. 1:18-cv-747

20

(D.D.C. April 3, 2018) (Doc. 3)). The first point is not determinative, however, and the second point is incorrect.

A non-solicitation agreement between competing employers is a form of labor-market allocation that, when not an ancillary restraint, *see* Section III, *infra*, is per se illegal. This conclusion follows directly from the settled rule that naked agreements among competitors to "divide markets" are per se unlawful. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). An agreement of this type "is a classic per se antitrust violation." *United States v. Brown*, 936 F.2d 1042, 1045 (9th Cir. 1991) (citing *United States v. Topco Assocs.*, 405 U.S. 596, 608 (1972)).

The prohibition against market division or allocation extends to agreements "between two competitors to refrain from seeking business from each other's existing accounts." *United States v. Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1372-73 (6th Cir. 1988). Such a non-solicitation agreement is manifestly anticompetitive because it forces the allocated customer to "face[] a monopoly seller" rather than reap the benefits of competition between sellers that would result in lower prices

21

or better product offerings.  *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir. 1994).

Just as an agreement among competing sellers to allocate customers eliminates competition for those customers, an agreement among competing employers to allocate employees eliminates competition for those employees. *Antitrust Law* ¶ 352c.  As with other types of allocation agreements, an employee who is a victim of an allocation agreement among employers cannot reap the benefits of competition among those employers that may result in higher wages or better terms of employment.  Agreements among competing employers not to solicit or hire each other's employees have almost identical anticompetitive effects to wage-fixing agreements:  They enable the employers to avoid competing over wages and other terms of employment offered to the affected employees.  As a leading antitrust treatise puts it, "[a]n agreement among employers that they will not compete against each other for the services of a particular employee or prospective employee is, in fact, a market-division agreement" and is "generally unlawful per se" if not negotiated as part of a collective bargaining process. *Antitrust Law* ¶ 2013b.

For these reasons, courts have recognized that naked agreements among competitors in labor markets not to solicit or hire each other's employees are per se violations of Section 1. In *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1039-40 (N.D. Cal. 2013), for example, the district court declined to dismiss the United States' claim that eBay and Intuit's agreement not to solicit or hire each other's employees was per se illegal, reasoning that an agreement among employers not to compete for employees was "a 'classic' horizontal market division" and that "[a]ntitrust law does not treat employment markets differently from other markets in this respect." The defendants ultimately entered into a consent decree enjoining the unlawful agreement. *See* Final Judgment 2, *United States v. eBay, Inc.*, No. 12-CV-05869-EJD-PSG (N.D. Cal. Sept. 2, 2014) (Doc. 66). Likewise, in *In re High-Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012), the court held that allegations of bilateral "Do Not Cold Call" agreements among high-tech firms were sufficient to plead a per se violation of the Sherman Act.

When the district court granted summary judgment against Aya's claims for "retaliatory damages," it deemed these decisions irrelevant

because "[b]oth cases, confronted with motions to dismiss, deferred ruling on whether the per se rule applies until summary judgment." ER44 (May 20, 2020 Order 26 n.8). Both decisions, however, accepted the legal principle that naked agreements between competitors not to solicit or hire each other's employees would be per se illegal; the courts simply declined to determine on the pleadings the disputed factual question whether the challenged agreements were, in fact, naked restraints. *See eBay*, 968 F. Supp. 2d at 1039-40; *High-Tech*, 856 F. Supp. 2d 1122. The court here followed the same approach at the pleading stage but appeared to reverse course on summary judgment, seeming to question whether no-poach restraints of any type could be per se illegal. ER44 (May 20, 2020 Order 26).

In reaching that conclusion, the court also drew a distinction between non-solicitation and no-poach agreements, relying in part on one of the United States' filings in a different case. It quoted the filing as saying that "[a] no-poaching agreement refers to an agreement between competing employers 'not to solicit, recruit, hire without prior approval, or otherwise compete for employees.'" ER44 (May 20, 2020 Order 26) (quoting Competitive Impact Statement 1, *United States v.*

24

*Knorr-Bremse AG*, No. 1:18-cv-747 (D.D.C. April 3, 2018) (Doc. 3)). The

quoted text, however, is from a sentence that described the allegations

concerning the particular agreements at issue. *See Knorr-Bremse*

Competitive Impact Statement 1 ("the Complaint alleges that Knorr

and Wabtec entered into a series of agreements not to solicit, recruit,

hire without prior approval, or otherwise compete for employees

(collectively, 'No-Poach Agreements')"). The United States was not

defining no-poach agreements in general, nor was it delineating there

the necessary components of a no-poach agreement. Indeed, the United

States uses the label "no-poach agreement" to encompass more than

the district court's definition allowed. The United States uses it to

identify a particular type of labor-market allocation: an agreement

among employers that includes any or all of the commitments not to

solicit, hire, or otherwise compete for certain employees. *See* U.S. Dep't

of Justice & Fed. Trade Comm'n, *Antitrust Guidance for Human*

*Resource Professionals* 3 (Oct. 2016).

    The district court also found it noteworthy that neither the

Supreme Court nor this Court has specifically addressed the per se

illegality of horizontal market allocation in the context of no-poach

agreements. *See* ER44 (May 20, 2020 Order 26). The per se rule, however, "treat[s] categories of restraints as necessarily illegal." *Leegin*, 551 U.S. at 886; *accord Brown*, 936 F.2d at 1045. The Supreme Court has long rejected the view that "the per se rule must be rejustified for every industry" or market, *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 351 (1982)—meaning, as relevant here, that the per se rule applies in labor markets, just as it does in product markets. As a matter of law, restraints that fall within one of the categories of per se illegality are of the type "that would always or almost always tend to restrict competition and decrease output." *Broadcast Music, Inc. v. Columbia Broadcasting Sys.*, 441 U.S. 1, 19-20 (1979). As explained above, naked non-solicitation agreements are of this type.

It is also of no moment that, in the no-poach context, buyers (here, employers that purchase employees' labor services) are the parties to the challenged agreement, rather than sellers. Per se rules apply to agreements among competing buyers in the same way that they apply to competing sellers because the Sherman Act protects competition broadly—not only in output markets where sellers compete to sell goods

or services, but also in input markets where businesses compete to purchase various inputs. *See Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 322, 323 (2007) (describing how, "[j]ust as sellers use output prices to compete for purchasers, buyers use bid prices to compete for scarce inputs"). Thus, naked, horizontal agreements among buyers to fix prices, *e.g.*, *Mandeville Island Farms v. Am. Crystal Sugar Co.*, 334 U.S. 219, 235-36 (1948), rig bids, *e.g.*, *United States v. Joyce*, 895 F.3d 673, 677 (9th Cir. 2018), or allocate markets, *e.g.*, *Brown*, 936 F.2d at 1045, are per se illegal.

In sum, a non-solicitation agreement is a form of market allocation. The per se rule applicable to naked, horizontal market allocations therefore applies to naked, horizontal non-solicitation agreements.

## III. AMN Bears The Burden To Demonstrate That The Non-Solicitation Agreement Is Reasonably Necessary To The Parties' Legitimate, Procompetitive Collaboration.

In a Section 1 case, once the plaintiff has demonstrated the existence of a non-solicitation agreement between competitors in a labor market, any defendant claiming that the agreement is an ancillary restraint bears the burden of showing that the agreement is reasonably

27

necessary to a legitimate collaboration. The district court here concluded that the non-solicitation provision was ancillary to the parties' subcontractual collaboration, but it did not conduct the applicable reasonable-necessity analysis.

**1.** In the seminal *Addyston Pipe* decision authored by then-Judge Taft (and approved by the Supreme Court's affirmance in relevant part), the court interpreted Section 1 to "incorporate[]" "[t]he common-law ancillary restraint doctrine." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1395 (9th Cir. 1984) (describing *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898)). Pursuant to that doctrine, an otherwise per se illegal horizontal restraint merits rule-of-reason treatment if it is (i) "subordinate and collateral," *Rothery Storage*, 792 F.2d at 224, to a "legitimate business collaboration, such as a business association or joint venture," *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006), and (ii) "reasonably necessary" to achieving that collaboration's procompetitive purpose, *Addyston Pipe*, 85 F. at 281; *accord Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1151 (9th Cir. 2003) (under the ancillary-restraints doctrine, the restraint at issue "must still be reasonably ancillary to the legitimate

28

cooperative aspects of the venture"); *L.A. Mem'l Coliseum*, 726 F.2d at 1395 (citing *Addyston Pipe*); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 346 (3d Cir. 2010) (similar).  The defendant bears the burden of demonstrating that the ancillary-restraints doctrine applies.  *See, e.g.*, *Freeman*, 322 F.3d at 1150-54 (doctrine described as "defense"); Gregory J. Werden, *The Ancillary Restraints Doctrine After* Dagher, 8 Sedona Conf. J. 17, 23-24 (2007) (collecting cases placing burden on defense).[2]

In *Los Angeles Memorial Coliseum*, this Court adopted the ancillary-restraints doctrine as described in *Addyston Pipe*, 85 F. 271; *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir. 1981); and Justice Rehnquist's dissenting opinion in *National Football League v. North American Soccer League*, 459 U.S. 1074 (1982).  *See L.A. Mem'l Coliseum*, 726 F.2d at 1395-96 (citing opinions).  Each treated reasonable necessity as an essential part of the ancillarity analysis.  *See*

---

[2] The placement of the burden does not mean that the doctrine is inapplicable at the pleading stage.  If the defense seeks a Fed. R. Civ. P. 12(b)(6) dismissal based on the ancillary-restraints doctrine, an affirmative defense, a court may grant the motion on that basis if the defense is "obvious . . . on the face of the complaint," *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

*NFL*, 459 U.S. at 1080; *Lektro-Vend Corp.*, 660 F.2d at 265; *Addyston Pipe*, 85 F. at 281. In *Los Angeles Memorial Coliseum*, however, this Court's application of that analysis was somewhat imprecise. It "assume[d]" that the restraint in question was "ancillary," 726 F.2d at 1395, seeming to refer to the first prong of the doctrine. It then explained that "[t]he ancillary restraint must then be tested under the rule of reason," including an assessment of any "less restrictive means," *id.*, which appeared to reference the second prong. The language used by this Court thus was not consistent with the caselaw that the Court was adopting. The United States submits that this Court should clarify that (i) a restraint is "ancillary" only if it has satisfied both prongs of the ancillary-restraints doctrine, and (ii) a court must engage in a distinct reasonable-necessity analysis to determine whether an otherwise per se unlawful restraint is ancillary before it proceeds to the rule of reason, as described below.

Under the reasonable-necessity prong of the ancillary-restraints doctrine, if the procompetitive benefits of a collaboration can be achieved through means significantly less restrictive of competition than the challenged restraint, that restraint is not reasonably necessary

30

to achieving the benefits of the collaboration. In making this determination, the court should consider the scope and duration of the restraint, *see Blackburn v. Sweeney*, 53 F.3d 825, 828-29 (7th Cir. 1995), which should be narrowly tailored to the collaboration's benefits, *see* Werden, *supra*, at 23 & n.62 (describing cases following the requisite analysis).

For example, in *Rothery Storage*, 792 F.2d at 227, the D.C. Circuit concluded that an agreement among competitors not to compete with each other for the duration of their contract was "reasonably necessary" to the legitimate collaboration among them. In that case, Atlas Van Lines prohibited independent-contractor moving companies from handling non-Atlas interstate carriage while under contract with Atlas, although each was permitted to handle such carriage through a separate, differently named corporation. *Id.* at 213. The restriction was intended to solve the free-riding problem of contract carriers' using "Atlas services and equipment on non-Atlas interstate shipments." *Ibid.* Such a practice "would create the risk of increased liability for Atlas although Atlas received no revenue from those shipments," and "the possible increase of such shipments meant that Atlas might make

31

large outlays for which it received no return." *Ibid.* To avoid this result, Atlas imposed a restriction that was limited in scope and duration: it applied only to interstate carriage handled by an Atlas contractor while that company was a member of the Atlas moving network. *See ibid.* The restriction also was narrowly tailored—not banning competition with independent contractors outright, but imposing the less restrictive alternative applicable only to the specific corporate entity under contract with Atlas. *See ibid.* The court agreed with Atlas that, without this mechanism to prevent free-riding, "the van line's incentive to spend for reputation, equipment, facilities, and services declines as it receives less of the benefit from them," which ultimately would "produce[] a deterioration of the system's efficiency." *Id.* at 221. Accordingly, the court held, "the challenged agreements are ancillary in that they enhance the efficiency of" the Atlas network "by eliminating the problem of the free ride." *Id.* at 224.

If the restraint is reasonably necessary and therefore ancillary, the restraint is "reviewed under the rule of reason in the context of the" legitimate collaboration "as a whole." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 340 (2d Cir. 2008) (Sotomayor, J.,

32

concurring in the judgment). The plaintiff must establish the elements of "the traditional rule of reason test, so as to" enable the court to "determine if there are significant anticompetitive impacts and if so whether they outweigh any legitimate justifications." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1139 (9th Cir. 2011) (en banc). The outcome is not necessarily predetermined by satisfaction of the ancillary-restraints doctrine. For example, even if the challenged restraint is reasonably necessary to the legitimate collaboration, the anticompetitive effects of the restraint may still dwarf the potential procompetitive benefits of the collaboration, making the restraint unreasonable and therefore unlawful under the Sherman Act.

**2.** Aya does not dispute that the non-solicitation provision was collateral to the parties' legitimate subcontractual relationship, *see* Aya Redacted Mem. in Opp'n to Mot. For Summ. J. 26-27 (D. Ct. Dkt. 206) (challenging only the reasonable-necessity prong of the ancillary-restraints doctrine), and thus the United States does not here detail the requirements for the first prong of the ancillary-restraints doctrine. The relevant dispute concerns only the second prong: the relationship between the restraint and that collaboration. The relevant question,

then, is whether the restraint is reasonably necessary to the collaboration's procompetitive purposes. The district court's analysis did not appear to seriously inquire into this question before concluding the non-solicitation provisions were not naked, but ancillary, agreements. ER44 (May 20, 2020 Order 26).[3]

First, the district court did not evaluate the particular non-solicitation provision at issue; nor did the court consider the possibility of less restrictive alternatives. Instead, the court gave near-dispositive weight to the fact that Aya's expert agreed in general that non-solicitation provisions in temporary-staffing subcontracts "can protect firms against risks that would otherwise be present and impede healthcare staffing agencies from collaborating to provide hospital customers with the travel nurse services that they demand." ER44 (May 20, 2020 Order 26). This reliance on generic possibilities, devoid of consideration of less restrictive alternatives, fell short of that correctly demonstrated in *Rothery*, where "the district court's conclusion that free riding existed" within the Atlas network was "amply

---

[3] Because the relevant portion of the court's summary-judgment decision references material that is under seal, however, the United States is unable to opine fully on these issues.

supported" by evidence from the summary-judgment record, *see* 792 F.2d at 221-22, and where the district court had "found it significant that Atlas adopted the less restrictive alternative of forcing affiliated carrier agents to" handle non-Atlas interstate carriage "through a separate company, rather than prohibiting" such carriage outright, *id.* at 214.

To be sure, elsewhere in its opinion, the district court considered circumstances in the healthcare-staffing industry that, if supported by the summary-judgment record, would be relevant to a reasonable-necessity analysis. In its discussion of Aya's Section 2 refusal-to-deal claim, the court stated that, "[w]ithout being able to provide for such contractual restraints [as the non-solicitation provision], the [healthcare staffing] companies would likely be less willing or unwilling to deal with other agencies to supply travel nurses to hospitals." ER46-47 (*Id.* at 28-29). Because the court there was considering the distinct question of whether AMN's alleged unilateral refusal to deal with Aya was "motivated by solely by the goal of stifling competition," ER46 (*Id.* at 28)—a question that allows for consideration of potential rational alternative motivations—it is unclear the extent to which the record

35

contains evidence supporting this statement. If it does, that evidence would suggest that a narrowly tailored non-solicitation agreement could be reasonably necessary to AMN's spillover-assignment collaboration with other companies such as Aya.

Second, the district court did not consider the scope of the restraint in the correct context. In rejecting the per se illegality of the parties' non-solicitation provision, it found "noteworthy" that the non-solicitation provisions did not "prevent [Aya] and other agencies from 'conducting general advertising to which AMN employees may respond' or hiring AMN employees." ER45 (May 20, 2020 Order 27). The scope of the restraint is certainly relevant to determining whether it is reasonably necessary under the ancillary-restraints doctrine; but that the restraint does "not eliminate all competition" between the participating parties does not necessarily remove it from the per se rule. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 235 n.61 (1940). "To fit under the per se rule an agreement need not foreclose all possible avenues of competition." *Blackburn*, 53 F.3d at 827; *accord Socony-Vacuum*, 310 U.S. at 224 n.59. The court's analysis did not tie this factor to the reasonable-necessity inquiry of the ancillary-restraints

36

doctrine; rather, the court appears incorrectly to have viewed it as precluding per se condemnation in the first instance. Under the correct analysis, the court should have evaluated whether the scope of the provision was narrowly tailored to the spillover-assignment collaboration's benefits. If so, this factor would weigh in favor of a finding that the restraint was reasonably necessary and thus ancillary.

## CONCLUSION

For the foregoing reasons, this Court should explain that naked non-solicitation agreements constitute per se unlawful market allocations and articulate the appropriate analysis to determine whether a restraint is ancillary. The United States takes no position on any other issues or the disposition of this appeal.

Respectfully submitted.

  /s/ Mary Helen Wimberly

MAKAN DELRAHIM
  *Assistant Attorney General*
MICHAEL F. MURRAY
  *Deputy Assistant Attorney General*
ELYSE DORSEY
  *Counsel to the Assistant Attorney General*

37

DANIEL E. HAAR
MARY HELEN WIMBERLY
  *Attorneys*
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
(202) 514-4510
maryhelen.wimberly@usdoj.gov

November 19, 2020     *Counsel for the United States*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 20-55679

I am the attorney or self-represented party.

**This brief contains** | 6,975 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____ .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Mary Helen Wimberly | **Date** | 11/19/2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*